UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIAN CORYE AND CHRISTINA FERKEY,

        Plaintiff,

                  1:16-CV-00887
v.
                  (GTS/TWD)
POLICE OFFICER MICHEL (supervisor
on duty), SERGEANT ANDERSON, ALBANY
DISTRICT ATTORNEY DAVID SOARES,

        Defendants.
_____

APPEARANCES:

JULIAN CORYE
Plaintiff pro se
17960 Ranchera Road
Shasta Lake, California 96019

CHRISTINA FERKEY
Plaintiff pro se
17960 Ranchera Road
Shasta Lake, California 96019


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

  The Clerk has sent to the Court for initial review the amended complaint in this 42 U.S.C.

§ 1983 civil rights action brought by Plaintiffs Julian Corye and Christina Ferkey against

Defendants Police Officer Michel (supervisor on duty), Sergeant Anderson, and Albany County

District Attorney David Soares.[1]  (Dkt. No. 5.)  Also before the Court are Plaintiffs' applications

---

[1]  The Albany Police Department was named as a defendant in Plaintiff's original
complaint.  (Dkt. No. 1.)  The Police Department has been deleted as a defendant in the amended
complaint.  (Dkt. No. 5.)

for leave to proceed *in forma pauperis* ("IFP Application"). (Dkt. Nos. 2 and 3.)

## I. PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiffs' IFP Applications, the Court finds that both Plaintiffs meet this standard. Therefore, Plaintiffs' IFP Applications (Dkt. Nos. 2 and 3) are granted.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

On September 11, 2015, Christina Ferkey ("Ferkey") was walking with her puppy when the puppy vomited on the sidewalk in front of a hair salon/dance studio where a few women were sitting.  (Dkt. No. 5 at 2[2].)  The women became angry even after Ferkey apologized and asked if they had something she could use to clean it up, refused to help her, and ultimately threatened her with bodily harm if she did not clean up the mess.  *Id.*  She cleaned up the mess after a lady in the store next to the salon gave her a plastic bag, and she then went home and told her fiancé, Julian Corye ("Corye") what had happened.  *Id*. at 2-3.

When Corye offered to take the couple's other dog out so Corye could buy cigarettes, he went to talk to the women at the salon.  *Id*. at 3.  Ferkey saw him and went there too, at which point the women began screaming at her and getting in her face.  *Id*.  Corye was hit from the side by a man, and around fifty people started assaulting both Corye and Ferkey.  *Id*. at 4.  When the police arrived, Corye was already on the ground, and he saw the arresting officer slam Ferkey, who was by that time naked, against the car.  *Id*.  When he asked the arresting police officer why he was being rough with Ferkey when she had done nothing, he came over and kicked Corye twice in the shoulder.  *Id.*  Another officer then lifted Corye, and the arresting officer punched him in the stomach causing him to vomit blood.  *Id*.

Corye, who was bleeding everywhere, was taken to the hospital by ambulance and

---

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

4

required to have an HIV blood test because his blood had gotten on the arresting officer.  *Id*.

Ferkey, who had been handcuffed and placed in a police car, was taken to the hospital when she

complained of feeling dizzy.  *Id*. at 3.  When Corye was taken to the station, he told the sergeant

what had happened and that there were cameras on the streetlights at the site of the incident.  *Id*.

at 5.  The Sergeant told Corye he would look into it.  *Id*.  Corye and Ferkey were not released

from jail for six or seven days and had to use his rent money for bail.  *Id.* at 4. Ultimately, assault

charges were dismissed against Corye and Ferkey because they were the ones who had been

assaulted.  *Id.* at 5.  According to Corye, he asked his attorney to request that the District

Attorney review tapes of the assault, but it never happened    that everyone assumed he and

Ferkey were guilty with no proof because they were Black.  *Id*. at 8.

Plaintiffs have alleged claims for Fourteenth Amendment denial of due process against

District Attorney Soares; false arrest, false imprisonment, and excessive force against Officer

Michel; and negligence, false arrest and imprisonment, and racial discrimination against Sergeant

Anderson.  *Id*. at 5-8.

IV.     **ANALYSIS**

  A.     **Claim Against Albany County District Attorney David Soares**

According to Plaintiffs, they and their attorney asked District Attorney Soares on several

occasions to review the cameras on the street lights in the area of the incident alleged in the

amended complaint to see if a crime had been committed, and it was not done.  (Dkt. No. 5 at 8.)

Plaintiffs assert that Albany County District Attorney David Soares thus failed in his

responsibility to properly investigate and establish a solid case against Plaintiffs in violation of

their right to due process under the Fourteenth Amendment.  *Id.*

"Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity." *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995). The Second Circuit explained in *Hill*, *id*. at 660-61, that:

> In determining whether absolute immunity obtains, we apply a "functional approach," looking at the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler* [*v. Pachtman*, 424 U.S. 409, 430 (1976)]. Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *Id*. at 430-31; *Buckley*, 509 U.S. at 273. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

"A prosecutor . . . has absolute immunity in connection with the decision whether or not to commence a prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges."); *Johnson v. City of New York*, No. 00CIV.3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)[3] (prosecutorial functions that are protected by absolute immunity "include the decision to bring charges against a defendant"); *Halpern v. City of New Haven*, 489 F. Supp. 841, 843 (D. Conn.

---

[3] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

6

1980) (prosecutorial immunity found where the prosecutor undertook no independent investigation of the charges and continued prosecution even after finding insufficient evidence to support the charges).

Because Plaintiffs' claim against District Attorney Soares is limited to his alleged failure to view the tapes from the cameras on the street lights before prosecuting them as Plaintiffs had requested, the Court recommends dismissal of the case with prejudice against District Attorney Soares.

### B.      Defendant Police Officer Michel and Sergeant Anderson

In their original complaint, Plaintiffs named as defendants Officer John Doe and Sergeant John Doe.  (Dkt. No. 1 at 1.)  In their amended complaint, they have named Police Officer Michel and Sergeant Anderson as defendants, and they have deleted the two Doe defendants from the caption and list of defendants, leading the Court to assume that Plaintiffs ascertained the names of the Doe defendants and made the substitution.[4]  (Dkt. No. 5 at 1.)  The Plaintiffs, however, have continued to refer to Officer John Doe and Sergeant John Doe in the body of the amended complaint and have not referred to either Officer Michel or Sergeant Anderson by name other than in the caption and the listing of defendants.  *Id*. at 1, 5-7.  Construing the amended complaint liberally as required given Plaintiffs' pro se status, the Court has nonetheless assumed solely for purposes of initial review that Officer John Doe is Officer Michel and Sergeant John Doe is Sergeant Anderson.

---

[4]  A July 20, 2016, Text Notice, sent to Plaintiff by regular mail, informed Plaintiffs that in the event they wished to pursue claims against the John Doe defendants, they should take reasonable steps to ascertain their identities.  Plaintiffs were advised that when they determined the identity of the John Doe defendants, they could seek to amend their complaint to add the properly named defendants pursuant to Rule 15 of the Federal Rules of Civil Procedure.

1.    Claims Against Officer Michel

        a.    False Arrest and False Imprisonment

Plaintiffs Corye and Ferkey were arrested and charged with assault and incarcerated for six and seven days in jail until bailed out. (Dkt. No. 5 at 4-5, 8.) The charges were subsequently dismissed. *Id*. at 9. Plaintiffs have alleged claims for false arrest and false imprisonment. *Id*. at 5, 8. Plaintiffs have not identified the defendant(s) against whom the claims are asserted. *Id*. The Court has assumed for purposes of initial review, that they intend to assert the claims against Officer Michel as the arresting officer.

To state a claim for false arrest under § 1983 or New York law, a plaintiff must allege that (1) the defendant intended to confine him; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Vasquez v. City of New York*, No. 99 Civ. 4606(DC), 2000 WL 869492, at *3 (S.D.N.Y. June 29, 2000) (quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J. dissenting)).

        b.    Excessive Force

Plaintiffs allege that Officer Michel, who was the arresting officer, slammed a naked Ferkey against the car, kicked Corye twice in the shoulder, punched him in the stomach, causing him to spit up blood, and forced him to take an HIV test because Corye had been bleeding and got blood on Michel. (Dkt. No. 5 at 4.) Plaintiffs also allege that they were both arrested for

assault and have both asserted claims for excessive force. *Id*. at 5.

Claims arising out of the use of force during an arrest are judged by the "objective reasonableness" standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determination of whether the amount of force used to seize someone was reasonable 'requires a careful balance of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Piper v. City of Elmira*, 12 F. Supp. 3d 577, 587 (W.D.N.Y. 2014) ( quoting *Graham*, 490 U.S. at 396). For a claim of excessive force to be actionable, a plaintiff must demonstrate that it was "objectively sufficiently serious or harmful." *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiffs' § 1983 claims for false arrest, false imprisonment, and excessive force in violation of their Fourth Amendment rights against Defendant Michel be found to survive initial review and require a response. In so recommending, the Court expresses no opinion as to whether any of the claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Claims Against Sergeant Anderson

Plaintiff Corye alleges that when he was taken to the police station following his arrest, he explained what had happened to Sergeant Anderson, whom Corye asserts was in charge of the case albeit not the arresting officer, and told Anderson about the cameras on the street lights. (Dkt. No. 5 at 4.) According to Corye, the Sergeant told him he would look into it and failed to do so. *Id.* The Court construes the amended complaint as having alleged claims by Plaintiffs against Sergeant Anderson for negligence, false arrest and false imprisonment, and racial

discrimination in violation of their Fourteenth Amendment right to equal protection of the law. *Id*. at 5, 9.

### a.  Negligence

With regard to Plaintiff's state law negligence claim, "New York does not recognize an action alleging negligent investigation or prosecution of a crime, as the police are not required to follow every lead that may yield evidence beneficial to the accused." *Hernandez v. State of New York*, 644 N.Y.S.2d 380, 382 (3d Dep't 1996) (citing *Gisondi v. Town of Harrison*, 532 N.Y.S.2d 234 (1988). Therefore, the Court recommends that Plaintiff's negligence claim against Sergeant Anderson be dismissed with prejudice.

### b.  False Arrest and False Imprisonment

Plaintiffs also appear to have alleged a false arrest and false imprisonment claims against Defendant Anderson. (Dkt. No. 5 at 5.) In order to survive dismissal, a complaint must plead enough facts to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. The Court finds that Plaintiffs' conclusory allegation that Sergeant Anderson was "in charge of the case" is inadequate to make a plausible showing in support of their false arrest claim. Furthermore, if Plaintiffs' false arrest claim is based solely on Sergeant Anderson's alleged failure to view the tapes from the cameras located at the site of the incident resulting in Plaintiffs' arrests, it fails to state a claim because law enforcement officers have no duty to investigate exculpatory defenses. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998).

Based upon the foregoing, the Court recommends that Plaintiffs' false arrest claim against Sergeant Anderson be dismissed without prejudice and that Plaintiff be allowed an opportunity to

submit an amended complaint.

c.     Equal Protection

Finally, Plaintiffs claim that Sergeant Anderson discriminated against them on account of their race[5] because they were treated differently than Caucasians would have been treated.[6]  (Dkt. No. 5 at 8.)  The Court has construed the claim as an enforcement claim under the Equal Protection Clause of the Fourteenth Amendment.

According to Plaintiffs, if a White person had asked the sergeant handling the case to check the cameras to see if that person had committed a crime, the cameras would have been checked.  *Id*.  Plaintiffs contend that because they are Black, no one took steps to see the truth; that they were already seen as guilty because of their skin color.  *Id*.  To prevail on their claim, Plaintiffs must show that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the constitutional rights, or malicious or bad faith intent to injure a person."  *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).  "A showing that the plaintiff was treated differently compared to others similarly situated is a 'prerequisite' and a 'threshold' matter to a selective treatment claim."  *Dava v. City of New York*, No. 1:15-cv-08575 (ALC), 2016 WL 4532203, at * 8 (S.D.N.Y. Aug. 29, 2016) (citation and internal quotation marks omitted).  Courts within this Circuit have held that individuals are similarly situated for purposes of a selective enforcement claim when they are

---

[5]  Plaintiffs have identified themselves as Black.  (Dkt. No. 5 at 5.)

[6]  The only factual allegations made with respect to Plaintiffs' racial discrimination cause of action involve Sergeant Anderson's failure to look at the tapes.  Neither Officer Michel nor District Attorney Soares has been implicated in the claim by Plaintiffs.  (*See* Dkt. No. 5 at 8.)

similarly situated in all material respects. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 692 (S.D.N.Y. 2011). "A plaintiff's naked assertions of discrimination are insufficient to survive the pleading stage." *Wright v. Nypd Officer Michael Manetta*, No. 14-cv-8976 (KFB), 16 WL 482973, at * 3 (S.D.N.Y. Feb. 5, 2016); *Dava*, 2016 WL 4532203, at *7 ("naked assertions of discrimination, absent any factual allegations regarding his own treatment in comparison to the treatment of other similarly situated individuals, are insufficient to support [an equal protection] claim").

The Court finds that Plaintiffs' conclusory assertion that Sergeant Anderson violated their rights to equal protection by failing to view the tapes from cameras at the site of the incident when he would have viewed them had the arrestee been White is insufficient to state a claim and recommends dismissal of Plaintiffs' equal protection claim with leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiffs' IFP Applications (Dkt. Nos. 2 and 3) be **GRANTED**; and it is

**RECOMMENDED** that the amended complaint (Dkt. No. 5) be **DISMISSED WITH PREJUDICE** against Defendant Albany County District Attorney David Soares; and it is further

**RECOMMENDED** that Plaintiffs' negligence claim against Defendant Sergeant Anderson be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiffs' claims for false arrest and imprisonment and violation of their right to equal protection against Defendant Sergeant Anderson be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the action be allowed to proceed against Defendant Officer

12

Michel, and that the Defendant, or his counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

**RECOMMENDED** that in the event the District Court allows Plaintiffs to file a second amended complaint, they be instructed that any second amended complaint be a complete pleading that supersedes their amended complaint (Dkt. No. 5) in all respects (and does not incorporate by reference any portion of their amended complaint); and that they not attempt to reassert any claims that have been dismissed with prejudice by the District Court, and that they not attempt to effect service on any defendant until such time as authorized by court order; and it is hereby

**ORDERED**, that the Clerk provide Plaintiffs with copies of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:  October 4, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2016 WL 4532203
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Madhu Dava, Plaintiff,
v.
City of New York, NYPD, NYPD Detective
Salvatore Giardina, Joseph Biden, Bill
Clinton, and Cindy Peña, Defendants.

1:15-cv-08575 (ALC)
|
Signed 08/29/2016

**Attorneys and Law Firms**

Rahul Dev Manchanda, Manchanda Law Offices, New
York, NY, for Plaintiff.

Michael Keith Gertzer, NYC Law Department, Office
of the Corporation Counsel, New York, NY, for
Defendants.

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District
Judge

 **\*1** Plaintiff Madhu Dava brings suit against the City of
New York ("the City"), his former girlfriend Cindy Pena,
the New York City Police Department ("NYPD"), NYPD
Detective Salvator Giardina, Vice President Joseph Biden,
and former President Bill Clinton. He alleges that
Defendants violated his constitutional rights when he
was arrested based on accusations lodged by Pena. In
addition, Plaintiff attacks the constitutionality of the
Violence Against Women Act of 1994 ("VAWA"), Pub
L. No. 103-322, and the Violent Crime Control and Law
Enforcement Act of 1994 ("VCCLEA"), Pub. L. 103-322.
Finally, Plaintiff brings related state law claims. The City
and Detective Giardina (collectively, the "New York City
Defendants") move to dismiss all claims against them. The
Court grants that motion in full. In addition, the Court *sua
sponte* dismisses the claims against all other Defendants.

## BACKGROUND

### I. Factual Background

For the purposes of this motion, the Court takes Plaintiff's
allegations as true and draws all reasonable inferences in
his favor.

#### a. Plaintiff's Arrest by the New York City Defendants

Plaintiff is an Indian national currently studying and
working in the United States. (Compl. ¶ 11, ECF No. 1.)
Plaintiff alleges that he was falsely arrested by Detective
Giardina and other members of the 49th Precinct of
the NYPD, even though he was "completely and totally
innocent, and the evidence before his arrest supported
his innocence." (Compl. ¶ 10.) He alleges that his arrest
stemmed from false accusations made by his girlfriend,
Defendant Peña. (Compl. ¶ 10.) However, according to
Plaintiff, he was arrested despite the fact that prior to his
detention and arrest, Peña "announced" that Plaintiff was
innocent and that she was in fact to blame for any incident
between them. (Compl. ¶ 11.)

Per Plaintiff, the criminal case against him was dismissed
on October 22, 2015, by the Bronx District Attorney's
Office, "due to the overwhelming evidence that not only
was Plaintiff innocent of all charges, but that he was in fact
the victim of domestic abuse, assault, battery, threats, and
false complaints" lodged by Pena. (Compl. ¶¶ 12-13.) In
addition, Plaintiff alleges that the NYPD refused to arrest
—and the Bronx District Attorney refused to prosecute—
Pena, despite evidence that she had filed a false complaint.
(Compl. ¶ 14.)

#### b. Plaintiff's Systemic Allegations

Plaintiff makes a number of allegations related to what
he perceives as systemic problems stemming from VAWA
and the VCCLEA. He alleges that these laws were drafted
by then-Senator Biden and signed into law by then-
President Clinton. (Compl. ¶ 1.)

Plaintiff alleges that these laws, "coupled with
purposefully recruited police officers across America who
are inherently racist, selectively enforce badly written
laws, and politically target certain individuals" have
resulted in the rise of mass incarceration and the "unfair
and illegal arrest, prosecutions and convictions of tens
of millions" of mostly minority, mostly male individuals.

(Compl. ¶ 1.) He also alleges that police officers have reported that these laws have deprived them of their discretion in making arrests, and thus even when a complaining party recants or fabricates allegations, "the state often and routinely picks up the case and aggressively prosecutes" it. (Compl. ¶ 4.) Plaintiff alleges that "[s]tudies have shown that the vast majority of those men unfairly prosecuted under the VCCLEA and VAWA statutes are those men that stayed too long in a bad relationship where they were the ones abused" and "where the female in the relationship used the unconstitutional protections afforded to her under VAWA to further abuse, hurt, and forever destroy the male in the relationship." (Compl. ¶ 9.)

**\*2** Finally, Plaintiff alleges that his arrest was part of a pattern in which Indian Americans are maliciously persecuted as "hostages" by the United States government, and in particular by New York City, as a way of pressuring India to have a more United States-friendly foreign policy. (Compl. ¶ 15.)

### c. Plaintiff's claims

Plaintiff alleges a total of nineteen claims against the Defendants, under 28 U.S.C. § 1983 and the New York State Constitution, and at common law. [1] He does not specify which claims are brought against which defendants or identify the facts underlying the individual claims.

First, under 28 U.S.C. § 1983, he brings claims of: (1) unlawful surveillance in violation of the Fourth Amendment; (2) unlawful eavesdropping in violation of the Fourth Amendment; (3) unlawful wiretapping and videotaping in violation of the Fourth Amendment; (4) unlawful deprivation of the freedom of speech in violation of the First and Fourteenth Amendments; (5) violation of the Equal Protection Clause; (6) unlawful search and seizure in violation of the Fourth and Fourteenth Amendments; (7) excessive use of force in violation of the Fifth and Fourteenth Amendments; (8) malicious prosecution in violation of the Fourth and Fourteenth Amendments; (9) violation of the Due Process Clause of the Fifth and Fourteenth Amendments; (10) prosecutorial misconduct, in violation of the First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments; and (11) judicial misconduct, in violation of the First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments. (Compl. ¶¶ 19A-19I; 19R-19S.) Plaintiff also brings a claim of municipal liability pursuant to *Monell v. Dep't of*

*Soc. Servs. ("Monell"),* 436 U.S. 658 (1978), premised on Defendants' failure to adequately supervise and train staff and agents; failure to properly and adequately monitor and discipline staff; and failure to adequately and properly investigate citizen complaints of misconduct. (Compl. ¶ 19J.)

Next, Plaintiff brings two claims under the New York State Constitution: (1) racially motivated attacks on Plaintiff in violation of the equal protection guaranteed by Art. I, § 11 of the New York State Constitution; and (2) unlawful search and seizure in violation of Art. I, § 12 of the New York State Constitution. (Compl. ¶¶ 19K-19L)

Finally, Plaintiff brings four common-law claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligent supervision, retention, and training. (Compl. ¶¶ 19M-19Q.)

### II. Procedural Background

Plaintiff initiated this action against all Defendants on November 1, 2015. (Compl.) Over Plaintiff's objection, the matter was referred to the Court-annexed mediation program, pursuant to the Southern District's Plan For Certain § 1983 Cases Against The City Of New York. (ECF Nos. 8-15.) On February 5, 2016, the New York City Defendants filed their answer. (ECF No. 18.) No other Defendant has answered or otherwise appeared.

**\*3** After the parties failed to reach a settlement in mediation, this Court held an initial pretrial conference on May 13, 2016. (*See* Tr. Initial Pretrial Conf. ("Tr."), ECF No. 26.) At that conference, the Court expressed concern over the adequacy of Plaintiff's factual allegations, and granted Plaintiff leave to amend his complaint. (Tr. 9-10.) However, Plaintiff indicated that in lieu of filing an amended complaint, he might prefer to file what he styled as "a brief in support" of his complaint. (Tr. 9-10.) Over the New York City Defendants' objection, the Court permitted Plaintiff to file either an amended complaint or his proposed "brief in support." (Tr. 10-11.) However, the Court warned Plaintiff that filing a brief arguing that a claim should survive without alleging additional facts in the complaint would not cure any defects of the complaint. (Tr. 10-11.)

On May 25, 2016, Plaintiff filed the contemplated brief in support of the original complaint. (ECF No. 22.) The

New York City Defendants requested that the brief be treated as a nullity, as a brief in support of a complaint is not contemplated by the Federal Rules of Civil Procedure. (ECF No. 23.) In the alternative, the New York City Defendants requested 30 days in which to respond. (ECF No. 23.) The Court granted the latter request, affording the New York City Defendants 30 days in which to respond to Plaintiff's brief. (ECF No. 25.)

On June 29, 2016, as its response, the New York City Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). (N.Y. Def.'s Mem., ECF No. 31.) That very day, Plaintiff filed his opposition to their motion. (Pl.'s Opp., ECF No. 32.) The New York City Defendants filed a reply brief the following day, June 30, 2016. (N.Y. Def.'s Reply, ECF No. 33.) Over the next several days, the parties exchanged a flurry of letters. (ECF Nos. 34-38.) Finally, on July 7, 2016, this Court informed the parties that it would consider the motion to dismiss to be fully briefed, that it would consider the motion based on the New York City Defendants' motion to dismiss, Plaintiff's opposition, and the New York City Defendants' reply, and that it would not consider any legal arguments contained in the letters. (ECF No. 39.) The Court now turns to the motion to dismiss.

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff 's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the Court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at

678, 681 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The Court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." [2] *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

**\*4** Whereas motions to dismiss pursuant to Rule 12(b)(6) are to be filed prior to the filing of an answer, motions for judgment on the pleadings pursuant to Rule 12(c) may be filed after the filing of an answer. *See* Fed. R. Civ. P. 12. In deciding a motion filed under Rule 12(c), the Court "appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Mantena v. Johnson*, 809 F.3d 721, 728-29 (2d Cir. 2015) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

**DISCUSSION**

Plaintiff brings nineteen claims against six defendants. The Court begins by explaining the scope of the present decision, in terms of the Defendants involved, then turns to Plaintiff's claims.

**I. Defendants**

**A. Claims Against the NYPD**

The New York Defendants have moved to dismiss the complaint in its entirety. As an initial matter, all claims against the New York City Police Department are dismissed pursuant to 28 U.S.C. § 1915A(b), because the NYPD is not a suable entity. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity). The viability of the claims against the remaining New York City Defendants is addressed below.

**B. Claims Against Non-New York City Defendants**

In addition, while the other defendants—President Clinton, Vice President Biden, and Cindy Pena—have not answered or otherwise appeared in this matter, "it is well settled that a 'district court has the power to dismiss a complaint *sua sponte* for failure to state a claim' so long as the plaintiff is given an opportunity to be heard." *Mentuhotep v. New York City Police Dep't*, No. 16 Civ. 2871 (GBD), 2016 WL 3522279, at *1 n. 1 (S.D.N.Y. June 22, 2016) (quoting *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)). Plaintiff here received notice at the May 13, 2016, status conference, during which the Court described the deficiencies it saw in various claims, explained that "whatever factual allegations are underpinning those claims need to be put in the complaint so that the defendants have notice of what the causes of action are and the basis for the causes of action," and gave Plaintiff leave to file an amended complaint. (Tr. 2-4, 8, 10-11.) Plaintiff was also given the opportunity to brief its opposition to the motion to dismiss. Thus, the Court will consider *sua sponte* whether dismissal is warranted for the claims against the non-New York City Defendants.

### C. Issues with Immunity

Finally, Plaintiff's claims against Detective Giardino, President Clinton, and Vice President Biden must overcome those defendants' immunity if they are to survive. The Court harbors serious doubts that Plaintiff may sustain any claims against President Clinton, as "a former President of the United States[ ] is entitled to absolute immunity from damages liability predicated on his official acts." *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). The same is true for claims against Vice President Biden stemming from actions he took as a senator, as "[i]t is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). However, as Plaintiff does not plausibly state any claims against any Defendant, the Court need not address with granularity to which claims each Defendant is immune.

### II. Plaintiff's Claims

**\*5** Plaintiff alleges nineteen claims, under 28 U.S.C. § 1983 and the New York State Constitution, and at common law.

### A. Section 1983

The Court construes Plaintiff's complaint to bring the following claims under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3) prosecutorial misconduct; (4) a Due Process claim; (5) an Equal Protection claim; (6) a claim of municipal liability pursuant to *Monell;* (7) illegal search in violation of the Fourth Amendment, encompassing the separately listed claims of illegal surveillance, eavesdropping, and wiretapping and videotaping; (8) excessive force; (9) judicial misconduct; and (10) a First Amendment claim.

### 1. False Arrest and Malicious Prosecution

To state a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted). "The existence of probable cause for an arrest—*i.e.*, that the arrest was privileged—is a defense to a claim for false arrest or malicious prosecution." *Corsini v. Brodsky*, No. 13 Civ. 2587 (LTS), 2015 WL 3456781, at *3 (S.D.N.Y. May 27, 2015) (citing *Curley v. Vill. Of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

Plaintiff's false arrest claim rests on his contentions that he was arrested "even though he was completely and totally innocent, and the evidence before his arrest supported his innocence," that he was "falsely accused by Peña," and that Peña "announced before his detention and arrest that Plaintiff was innocent." (Compl. ¶¶ 10-11.) These allegations are insufficient to establish that his confinement was "not otherwise privileged," *i.e.* that the New York City Defendants lacked probable cause. Plaintiff's own allegations establish that Peña lodged an accusation against him (*see* Compl. ¶ 10), and "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citations and quotation marks omitted). While Plaintiff asserts that Peña later "announced" that Plaintiff was innocent, he provides no context at all for this announcement—for example, to whom it was made, whether the arresting officers were aware of the announcement, or whether it was made in circumstances

that might lead police to conclude it was not voluntary. As a result, "[t]he ... [c]omplaint proffers no specific facts to support Plaintiff's contention that the arresting officers should have known at the time of the arrest[ ] that [Pena's] complaints were false and should for that reason have refused to act upon them," *Corsini*, 2015 WL 3456781, at *4. Plaintiff's conclusory assertions that he was "falsely arrested," "falsely accused," and innocent of the charges against him are insufficient to plausibly plead the required element that "the confinement was not otherwise privileged." Thus, Plaintiff's false arrest claim is dismissed.

**\*6** Plaintiff's malicious prosecution claim must be dismissed for the same reason. To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions," *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation and internal quotation marks omitted), and that his Fourth Amendment rights were violated after legal proceedings were initiated. *Id.* (citations omitted). Plaintiff's failure to plead facts—rather than conclusory allegations—sufficient to establish a lack of probable cause dooms his malicious prosecution claim, as well. *See Corsini*, 2015 WL 3456781, at *4 ("Mere conclusory allegations that [the] complaints were false are insufficient to establish lack of probable cause. Accordingly, Plaintiff's claims of malicious prosecution must be dismissed."). Plaintiff's malicious prosecution claim, like his false arrest claim, is dismissed.

### 2. Prosecutorial Misconduct

Plaintiff brings a claim of prosecutorial misconduct, apparently based on the Bronx District Attorney's refusal to prosecute Defendant Peña when presented with evidence that Pena committed a crime. (Compl. ¶ 14.) Plaintiff does not name any prosecutors as defendants —nor could he have, as "[p]rosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case." *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011). The decision of whether or not to bring charges

falls squarely within the scope of absolute prosecutorial immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("[T]he initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ..."); *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("Where ... a prosecutor's charging decisions are not accompanied by any such unauthorized demand [for, for example, a bribe, sexual favors, or the defendant's performance of a religious act] the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity."); *see also Town of Newton v. Rumery*, 480 U.S. 386, 396 (1987) ("Our decisions in those cases uniformly have recognized that courts normally must defer to prosecutorial decisions as to whom to prosecute.").

Because no prosecutors are named as defendants in this action, it is unclear against whom Plaintiff intends to assert this claim. To the extent that it is brought against any individual, it is dismissed. To the extent that it is brought against the City, the Court addresses it below in the context of Plaintiff's *Monell* claims.

### 3. Due Process

Plaintiff alleges that Defendants violated his right to be free from deprivation of liberty without due process of law. (Compl. ¶ 191.) It is unclear whether he claims the violation of his procedural or substantive due process rights, or both, so the Court addresses both.

As for substantive due process, "[w]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.' " *Holland v. City of New York*, No. 14 Civ. 5517 (AT), 2016 WL 3636249, at *11 (S.D.N.Y. June 24, 2016) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000)); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits government action, plaintiff's seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."). Because Plaintiff's constitutional claims are covered by the First, Fourth, Sixth, Thirteenth, and Fourteenth Amendments, he cannot bring an additional claim for violation of his right to substantive due process under the Fourteenth

Amendment. *See Holland*, 2016 WL 3636249, at \*11 ("[P]laintiff's substantive due process claim is either subsumed in her more particularized allegations raising First Amendment and Equal Protection Clause claims, or must fail" (quoting *Velez*, 401 F.3d at 94) (internal quotation marks omitted)). To the extent that Plaintiff brings a substantive due process claim, it is dismissed.

**\*7** As for procedural due process, to state a claim, a plaintiff must show: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Plaintiff does not identify the liberty interest at issue, nor does he identify the process which he finds to be insufficient. Because he alleges no facts that would serve "to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Port Dock*, 507 F.3d at 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555), to the extent that Plaintiff brings a procedural due process claim, it is also dismissed.

### 4. Equal Protection

Plaintiff brings a claim that he was discriminated against on the basis of race, religion, and ethnicity, which the Court takes to be a claim of denial of equal protection of the laws. "There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). A plaintiff could: (1) "point to a law or policy that expressly classifies persons on [an improper basis];" (2) "identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner;" or, (3) "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Id.* Plaintiff appears to proceed under the second or third theory.

As to the second theory—that the facially neutral VCCLEA and VAWA were applied in an intentionally discriminatory manner, constituting selective enforcement —he alleges that his arrest "was a racist and discriminatory action as Plaintiff is an Indian national currently studying/working in the United States, and is otherwise a model and well-behaved intelligent individual." (Compl. ¶ 11.) He further alleges that defendant Peña "took advantage of the institutionally racist New York City criminal justice system, the racist

atmosphere of today's policing, and the ease with which any woman can destroy an innocent man's life with false complaints and false allegations." (Compl. ¶ 12.)

To prevail on this selective enforcement theory, the "plaintiff must show that: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Wright v. NYPD Officer Michael Marietta*, No. 14 Civ. 8976 (KBF), 2016 WL 482973, at \*3 (S.D.N.Y. Feb. 5, 2016) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). "A showing that the plaintiff was treated differently compared to others similarly situated' is a 'prerequisite' and a 'threshold' matter to a selective treatment claim." *Id.* (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 692 (S.D.N.Y. 2011)). "A plaintiff's naked assertions of discrimination are insufficient to survive the pleading stage." *Id.* (quoting *Liang v. City of New York*, No. 10 Civ. 3089, 2013 WL 5366394, at \*11 (E.D.N.Y. Sept. 24, 2013)).

It is far from clear that the challenged laws, VAWA and the VCCLEA, had anything to do with Plaintiff's arrest. But even if the Court assumes these laws provided the basis for the arrest, Plaintiff's claim must be dismissed. This is because Plaintiff does not establish the threshold requirement of the claim: that he was subjected to selective treatment when compared with others similarly situated to him. Plaintiff identifies no other individual at all to whom he may be compared. His naked assertions of discrimination, absent any factual allegations regarding his own treatment in comparison to the treatment of other similarly situated individuals, are insufficient to support the claim. His equal protection claim cannot be sustained under a theory of selective enforcement.

**\*8** Nor can it be sustained under the third theory— that the facially neutral VCCLEA and VAWA have adverse effects, and that their passage was motivated by discriminatory animus. In support of that theory, Plaintiff alleges that the laws are "inherently racist" and that the laws have resulted in "the horrifying statistics that 1/3 of all black children being bom today will end up in jail due to these two statutes, 1/6 of all Latinos, while only 1/17 of white children will end up falling into

this quagmire." (Compl. ¶¶ 1, 5.) Plaintiff also alleges, "In 2015, former President Bill Clinton announced in several major newspapers that enacting the VCCLEA and VAWA laws were the 'worst mistakes of his entire career.' " (Compl. ¶ 5.)

But "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Hayden v. Paterson*, 594 F.3d 150, 162-63 (2d Cir. 2010) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)) (alteration omitted). "Although disproportionate impact is not irrelevant, to violate the Fourteenth Amendment the disproportionate impact must be traced to a *purpose* to discriminate on the basis of race." *Id.* (emphasis in original) (alteration, citations, and internal quotation marks omitted). Further, to plausibly plead the required discriminatory purpose element, "[t]he [c]omplaint must plead sufficient factual matters to show that the Defendants adopted and implemented the challenged policy 'at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.' " *Baez v. New York City Dep't of Transp.*, No. 14 Civ. 02520 (LGS), 2015 WL 3763878, at *4 (S.D.N.Y. June 15, 2015) (quoting *Hayden v,* 594 F.3d at 161-62).

Plaintiff does not adequately plead an Equal Protection claim under this theory because while he pleads the existence of a disparate impact, he does not plead the existence of a discriminatory purpose. Indeed, he does not even allege that at the time VAWA and the VCCLEA were passed, those who passed it were aware of its adverse effects on identifiable groups. While Plaintiff repeatedly alleges that the laws have had a disparate impact on various groups—black and Latino men, men generally, and Indian nationals—this alone cannot sustain his Equal Protection claim, and it must be dismissed.

### 5. *Monell* Liability [3]

Plaintiff alleges that the City is liable for various constitutional violations, under *Monell.* Pursuant to *Monell*, a 42 U.S.C. § 1983 claim may only be brought against a municipality if the action that is alleged to be unconstitutional is caused by an official policy or custom. *Id.* at 690, 691. The plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused

his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). The policy or custom may come in one of four forms:

> **\*9** (1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted).

At the pleading stage, the plaintiff need not *prove* the existence of the policy or custom, but he must do more than "merely allege the existence of a municipal policy or custom ..." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015). Instead, he "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* (citation and internal quotation marks omitted). Conclusory or boilerplate allegations of a municipal custom or practice, without factual details, cannot establish the existence of such a custom for the purposes of a motion to dismiss. *Id.*

Plaintiff's *Monell* claims against the City must be dismissed because his allegations are the very epitome of boilerplate. He does not identify any specific policies or practices, nor does he explain how any policy caused him to suffer the denial of a constitutional right. At its most specific, the complaint alleges:

Defendants developed, implemented, enforced, encouraged, and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights which caused the violation of such rights; Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under his 1st, 4th, 5th, 6th, 13th, and 14th Amendments ...

(Compl. ¶ 19J). Under even the most generous of readings, such conclusory allegations are clearly insufficient to sustain a *Monell* claim. *See Scalpi v. Town of E. Fishkill*, No. 14 Civ. 2126 (KMK), 2016 WL 858955, at *8 (S.D.N.Y. Feb. 29, 2016) (dismissing *Monell* claim where "Plaintiff broadly, and without specific factual allegations, contends that the County 'failed to train [its] agents properly.' "); *Santos v. N.Y. City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the] claims against the City are dismissed with prejudice." (citation omitted)); *Harris v. Nassau Cty.*, No. 13 Civ. 4728, 2016 WL 3023265, at *11 (E.D.N.Y. May 24, 2016) ("Plaintiff's claims are supported by nothing more than conclusory, boilerplate statements. Plaintiff has not specifically identified an official policy or explained how that policy caused him to suffer the denial of a constitutional right.").

### 6. Other Claims

Plaintiff brings three last claims pursuant to 42 U.S.C. § 1983: a Fourth Amendment search claim; a First Amendment claim; and a claim of judicial misconduct. These also must also be dismissed. Plaintiff fails to plead any factual allegations whatsoever in support of these claims, despite the Court's notice to Plaintiff of the pleading deficiencies at the initial pretrial conference and Plaintiff's opportunity to file an amended complaint.[4] To the extent Plaintiff has provided *any* context for these claims, it has only come in the form of statements in his memoranda of law and at the conference.[5] But as the

Court warned Plaintiff at the conference, facts must be alleged in the complaint itself.[6] It is insufficient to allege facts in a legal memoranda or at a hearing. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 526 (S.D.N.Y. 2015) (collecting cases).

**\*10** From Plaintiff's representations at the conference and in his memoranda of law, it seems that he intends to bring these claims not on his own behalf but on behalf of others. For instance, the Court asked how Plaintiff could bring Sixth Amendment claims regarding trial rights when the charges against him were dropped before trial. Plaintiff's counsel replied, "The reason we brought up other similarly situated individuals is because some people are not as lucky as my client, in the sense that he was released within a few hours or days and that he was exonerated at the subsequent criminal case when I was his counsel." (Tr. 5.) Counsel continued, "So when we talk with generalities, your honor, we are talking about other people similarly situated ... the reason we bring up the other people similarly situated and the reason we kept our claims relatively broad are because, while some of the elements may touch specifically on the facts of our case, some of them may be ancillary, and we'd be more than happy to brief that ..." (Tr. 6.)

While counsel's statements explain the lack of factual allegations in support of his claims, they do not excuse it. Plaintiff has complied with none of the requirements for bringing a class action. To start, he does not describe a proposed class, nor does he allege the existence of the four prerequisites of a Rule 23 class action: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Furthermore, even if Plaintiff were to bring a class action, he would still have to establish that he has Article III standing to pursue the claims. To satisfy Article III standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). "In the class action context, Article III standing requires that 'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant.' " *Catalano v. BMW of N. Am., LLC*, ___ F. Supp. 3d ____, No. 15 Civ. 4889 (KBF), 2016 WL 844832,

at *8 (S.D.N.Y. Mar. 1, 2016) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)). This means that to determine whether Article III standing exists, the Court looks to the named plaintiff, rather than the proposed class. *Id.* (citing *Mahon*, 683 F.3d at 64). Where, as here, there is but one named plaintiff, that plaintiff must have standing to bring each claim asserted. *See id.*

It is clear that Plaintiff does not have standing to bring what he refers to as "generalized" claims, as he may not assert claims where he himself has not suffered an injury. Thus, Plaintiff's remaining 42 U.S.C. § 1983 claims must be dismissed. *See Catalano*, 2016 WL 844832, at *8 ("Because the only named plaintiff does not have a direct claim against [Defendant], [Defendant] must be dismissed on Article III standing grounds.").

**B. New York State Constitution**

Plaintiff next alleges two claims under the New York State Constitution: (1) violation of the state constitution's equal protection clause; and (2) violation of the state constitution's protections against unreasonable searches and seizures. However, "[i]t is a common view among District Courts in this Circuit ... that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Gounden v. City of New York*, No. 14 Civ. 7411, 2015 WL 5793625, at *5 n. 3 (E.D.N.Y. Oct. 2, 2015) (citing *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439 (S.D.N.Y. 1999)); *see also Sherman v. Town of Chester*, No. 12 Civ. 647 (ER), 2015 WL 1473430, at *14 (S.D.N.Y. Mar. 31, 2015) ("[T]here is no private right of action for violations of the New York State Constitution where, as here, alternative remedies exist pursuant to, for example, 42 U.S.C. § 1983 ..." (citation omitted)); *Hollins v. City of New York*, No. 10 Civ. 1650 (LGS), 2014 WL 836950, at *14 (S.D.N.Y. Mar. 3, 2014) ("Courts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy." (citation omitted)); *Davis v. City of New York*, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013) ("New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." (citation omitted)).

**\*11** Because 42 U.S.C. § 1983 provides a remedy for both equal protection claims and unreasonable search claims,

there is no private right of action for these claims under the state constitution. *See Flores*, 41 F. Supp. 2d at 447 (finding no private right of action for search claim under state constitution); *Gounden*, 2015 WL 5793625, at *5 n. 3 (finding no private right of action for equal protection claim under state constitution, or in the alternative, declining to exercise supplemental jurisdiction over such a claim). Accordingly, Plaintiff's state constitution claims are dismissed.

**C. State Common-Law Claims**

Finally, Plaintiff alleges four common law claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligent supervision, retention, and training.

**1. Intentional and Negligent Infliction of Emotional Distress**

To establish a claim of intentional infliction of emotional distress, "a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (N.Y. 1993)). The conduct in question must be "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Id.* (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (N.Y. 1985)). The tort "remains a highly disfavored tort under New York law," "to be invoked only as a last resort." *Id.* (alterations and citations omitted). As such, "a claim for [intentional infliction of emotional distress] may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability." *Id.* at 159 (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (N.Y. 1978)).

Plaintiff's claim cannot overcome these high barriers, for several reasons. First, Plaintiff "does not indicate against which defendants he intends to make this claim, or for what particular actions." *Kennedy v. City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *17 (S.D.N.Y. Oct. 23, 2015). Second, any conduct alleged to

have been suffered personally by Plaintiff—most notably, his arrest—is not sufficiently outrageous to satisfy the first element of intentional infliction of emotional distress. *See Sorrell v. Cty. of Nassau*, No. 10 CV 49 (DRH) (GRB), 2016 WL 740434, at *10 (E.D.N.Y. Feb. 24, 2016) (dismissing Plaintiff's claim where Plaintiff argued that as a result of his false arrest by defendant, he was incarcerated at a tough prison for four months and had his parole time pushed back). Finally, "the conduct of which Plaintiff complains falls within the scope of claims of unreasonable search and seizure, false arrest, and malicious prosecution." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 581 (S.D.N.Y. 2015). For all of these reasons, the intentional infliction of emotional distress claim is dismissed.

For similar reasons, Plaintiff's claim of negligent infliction of emotional distress must be dismissed. "Under New York law, a claim of negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (quoting *Garrison v. Toshiba Bus. Solutions (USA), Inc.*, 907 F.Supp.2d 301, 307 (E.D.N.Y. 2012)). "Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the bystander theory; or (2) the direct duty theory." *Id.* (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). "Both theories require physical injury or the threat of danger, either to the plaintiff herself or to a close family member." *Id.* (alteration, citation, and internal quotation marks omitted). Plaintiff again fails to make the requisite showing of extreme and outrageous conduct. Furthermore, he fails to allege any physical injury or threat of physical injury. Accordingly, his negligent infliction of emotional distress claim is dismissed.

### 2. Negligence and Negligent Supervision

**\*12** Plaintiff alleges a claim of negligence and a claim of negligent supervision, retention, and training. "To state a claim for negligence under New York law, a plaintiff must allege (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." *Podlach v. Vill. of Southampton*, No. 14 Civ. 6954, 2016 WL 877763, at *12

(E.D.N.Y. Jan. 7, 2016) (quoting *Field Day, LLC v. Cty. of Suffolk*, No. 04 Civ. 2202, 2005 WL 2445794, at *23 (E.D.N.Y. Sept. 30, 2005)). "Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence." *Bah v. City of New York*, No. 13 Civ. 6690 (PKC), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)). "Though litigants may allege alternate, or inconsistent, claims in a pleading, when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Id.* (internal citation omitted). In addition, New York law "bars all negligence claims arising out of allegedly improper procedures during an arrest." *Harley v. The City of New York*, No. 14 Civ. 5452, 2016 WL 552477, at *6 n. 11 (E.D.N.Y. Feb. 10, 2016) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

As with most of Plaintiff's claims, it is unclear what factual allegations underlie his negligence claim, and so the Court cannot say that he plausibly alleges any of the required elements. In addition, to the extent that this claim is based on Defendants' alleged intentional acts such as Defendants' arrest of Plaintiff, the claim is not cognizable. Accordingly, it must be dismissed.

Even where an individual defendant cannot be held liable, however, "a number of courts in this Circuit have recognized a municipal liability claim based on negligent training and supervision." *Harley*, 2016 WL 552477, at *6 n. 11 (collecting cases). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

But because Plaintiff does not allege any facts in support of his negligent training claim, this claim too must be dismissed. Plaintiff does not identify a tortfeasor or an injury in relation to this claim and so it is impossible to ascertain whether the tortfeasor and the City were in an employee-employer relationship, let alone that the employer knew or should have known of the employee's

propensity for the conduct which caused the injury prior to the injury's occurrence. In light of these deficiencies, Plaintiff has failed to state a plausible claim of negligent supervision, retention, and training.

**CONCLUSION**

For the foregoing reasons, all of Plaintiff's claims are dismissed. The Clerk of Court is respectfully directed to terminate ECF No. 28.

**SO ORDERED.**

**All Citations**

Slip Copy, 2016 WL 4532203

Footnotes

1   Plaintiff at one point alleges, "This case involves a Civil Rights action under 42 U.S.C. § 1983 and 1988 wherein the above named Defendants have acted have acted in concert and conspiracy to deprive Plaintiff and others similarly situated in this potential class action ..." (Compl. ¶ 16.) Nowhere else in the complaint does he allege claims under 42 U.S.C. § 1988 or allege claims on behalf of a purported class, nor does he follow any of the procedures for bringing his suit as a class action. *See generally* Fed. R. Civ. P. 23. Thus, the Court does not analyze any claims under 42 U.S.C. § 1988, and the Court considers Plaintiff's claims to be raised only on his own behalf.

2   The New York City Defendants submitted with their motion outside materials, including the declaration of Defendant Giardina and a statement to the police signed by Defendant Pena. (*See* ECF Nos. 29-1; 30.) Plaintiff objects to the introduction of these materials at this stage. (Pl.'s Opp. ¶ 4.) The Court did not rely on the materials in coming to its decision and thus need not resolve this dispute.

3   Plaintiff's municipal liability claims must fail for each claim for which Plaintiff fails to show that the individual defendants committed underlying constitutional violations. But out of an abundance of caution, the Court separately analyzes Plaintiff's *Monell* claim against the City. *See Askins v. Doe No. 1*, 727 F.3d 248, 253-54 (2d Cir. 2013) ("Where the plaintiff does proceed against both the municipal actors alleged to have inflicted the tort and the municipality that promulgated the offensive policy, the plaintiff's failure to secure a judgment against the individual actors would, indeed, preclude a judgment against the municipality *if* the ruling in favor of the individual defendants resulted from the plaintiff's failure to show that they committed the alleged tort.")

4   At the conference, the Court stated, "I didn't see any factual allegations in the complaint relating to any alleged judicial misconduct." (Tr. 2.) Later, the Court stated, "I raised questions about the relief related to alleged violations of the First Amendment. I didn't see any allegations in the complaint relating to t h a t .... whatever those claims are, the factual underpinnings for that claim need to be further elucidated in the complaint because I don't see them in the complaint that's currently before me." (Tr. 2-3.)

5   A court reporter was present for the second half of the conference, during which time the Court re-stated for the record Plaintiff's counsel's earlier representations. As to the judicial misconduct claim, the Court recounted, "I didn't see any factual allegations in the complaint relating to any alleged judicial misconduct. Plaintiff's counsel had mentioned something about the judge in the Bronx refusing to sign a warrant for the arrest of one of the defendants as a factual basis for that claim." (Tr. 3.) As to the First Amendment claim, the Court recounted, "I raised questions about the relief related to the alleged violations of the First Amendment. I didn't see any allegations in the complaint relating to that. Plaintiff's counsel had mentioned something about the fact that his client protested his innocence to the officers and the officers did not believe him, or something to that effect." (Tr. 3.)

6   The Court told Plaintiff, "[S]imply filing a brief that explains why this claim should survive, and then putting those facts in the brief, is going to create issues. I need the facts. The facts need to be in the complaint ... You have mentioned some of these things in court, but they need to be in the complaint." (10-11.)

**End of Document**                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant
District Attorney Robert Henoch, Captain
of Corrections Martin, Corrections Officer
Schmidt, Corrections Officer Brown and
Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant
to 42 U.S.C. § 1983 seeking monetary damages on the
grounds that the defendants—the City of New York,
an Assistant District Attorney, and certain Corrections
Officers—violated his constitutional rights under the
Fourth, Eighth and Fourteenth Amendments to the U.S.
Constitution by failing to protect him from an attack
by fellow inmates against whom he had arranged to
testify. Johnson also asserts two tort claims. The Assistant
District Attorney moves to dismiss the complaint as it
pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for
failure to state a claim upon which relief can be granted
and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject
matter jurisdiction. For the following reasons, the motion
is granted and the complaint is dismissed as to ADA
Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are
assumed to be true for purpose of this motion. In May
of 1998 Johnson was arrested for allegedly selling crack
cocaine. Complaint at 4. Shortly after his arrest, he
entered into a cooperation agreement with ADA Henoch
to testify against several of his co-defendants. [1] *Id.* ADA
Henoch allegedly "assured" plaintiff at that time that he

"would protect him[ ]" from possible retaliation by his
co-defendants. *Id.* Johnson claims that he was being held
in Beacon, a housing area on Rikers Island, which was
in "the same general area" as where the people against
whom he was to testify were held and that he alerted ADA
Henoch of this fact. *Id.* ADA Henoch "explicitly assured
[him] that he would be safe" and that "he would be placed
in protective custody." *Id.* at 4–5. Plaintiff also alerted
defendant Corrections Officers Martin, Schmidt, Brown
and "Unidentified Correction Officers" to his danger. *Id.*
at 5.

On February 24, 1999, plaintiff was attacked by fellow
inmates "who called him a snitch as they beat and
kicked him." *Id.* As a result of the beating, Johnson
suffered a fractured ankle, injuries to his head, neck and
legs, and damage to his retina that required surgery. *Id.*
ADA Henoch, after learning of the attack on plaintiff,
"acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the
City of New York, Correction Officers Martin, Schmidt,
Brown, and ADA Henoch and the ADA has moved to
dismiss the complaint on the grounds that it fails to state
a constitutional claim for which relief may be granted
and that he is entitled to either absolute or qualified
prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept
as true the factual allegations of the complaint and must
view the pleadings in the light most favorable to and draw
all reasonable inferences in favor of the non-moving party.
*See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27,
2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170,
1174 (2d Cir.1993)). Dismissal of the complaint is only
proper when "it appears beyond doubt that plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–
46 (1957).

I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely
immune from suits for damages arising from actions which
are "intimately associated with the judicial phase of the
criminal process." *Imbler v. Pachtman,* 424 U.S. 409,

430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818). To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v.. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago*

*County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson. [2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor

*Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, *3 (S.D.N.Y. Nov. 6, 1995) (citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988).

However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

III. *The Pendent State Claims*

*5 The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

Footnotes

1   The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

2   Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

                © 2016 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by B. v. City of New York, E.D.N.Y., August 29, 2016

2000 WL 869492

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

George VASQUEZ, Plaintiff,

v.

THE CITY OF NEW YORK, New York City Police
Department, New York City Housing Authority,
New York City Housing Police Officers John Doe
# 1 through # 5, New York City Police Officer
John Doe # 6, 9th Precinct, New York City Police
Officers John Doe # 7 and # 8, Defendants.

No. 99 Civ. 4606(DC).
|
June 29, 2000.

**Attorneys and Law Firms**

George Vasquez, New York, New York, Plaintiff, pro se.

Newman Fitch Altheim Myers, P.C., New York City
Housing Authority, By: Jami Berliner, New York, New
York, for Defendant.

Michael D. Hess, Corporation Counsel of the City of
New York, By: Frances Sands, New York, New York, for
Defendants City of New York and New York City Police
Department.

*MEMORANDUM DECISION*

CHIN, J.

**\*1** *Pro se* plaintiff George Vasquez was arrested and
incarcerated on September 21, 1995 for Criminal Sale
of a Controlled Substance in the Third Degree. He
remained incarcerated until April 17, 1996, when he
was acquitted of the charge after a jury trial. Vasquez
then commenced this civil rights action pursuant to 42
U.S.C. § 1983, alleging false arrest, false imprisonment,
and malicious prosecution by defendants, in violation
of his constitutional rights. Defendants move to dismiss
the complaint pursuant to Fed R. Civ. P. 12(b)(6) or,
in the alternative, for summary judgment, pursuant to
Fed.R.Civ.P. 56. Plaintiff did not respond to defendants'

motions. For the reasons that follow, the motions to
dismiss are granted and the complaint is dismissed.

*BACKGROUND*

The facts as alleged by Vasquez, and assumed to be true
on these motions to dismiss, [1] are as follows:

On September 21, 1995, plaintiff was arrested and
incarcerated for Criminal Sale of a Controlled Substance
in the Third Degree in violation of Penal Law §
220.39(1). [2] (Compl. ¶ 4; City's Notice of Motion, Ex.
A (Arrest Report)). The Criminal Felony Complaint
alleges in pertinent part that New York City Police
Officer Nathan McKinney observed Vasquez "give Maria
Nelson ... a narcotic drug, to wit five bags of heroin and
one bag of cocaine, in exchange for money." (City's Notice
of Motion, Ex. B (Criminal Felony Complaint)).

Vasquez was indicted by the Special Narcotics Grand Jury
on the charge of Criminal Sale of a Controlled Substance
in the Third Degree on November 30, 1995. (Compl. ¶ 4;
City's Notice of Motion, Ex. C (Grand Jury Indictment)).
On April 17, 1996, after a jury trial, he was acquitted of
the charge. (Compl. ¶ 4; City's Notice of Motion, Ex. D
(Acquittal)). Vasquez had been incarcerated from the time
of his arrest until his acquittal. (Compl.¶ 4).

On April 16, 1999, plaintiff filed the instant complaint,
seeking $500,000 in compensatory damages and $100,000
in punitive damages, alleging false arrest, false
imprisonment, and malicious prosecution. Defendants
City of New York (the "City") and the New York City
Police Department (the "NYPD") moved to dismiss the
complaint or, in the alternative, for summary judgment on
November 30, 1999. On December 3, 1999, defendant
New York City Housing Authority (the "NYCHA") filed
a similar motion. [3]

In an order dated December 8, 1999, I set a briefing
schedule and cautioned plaintiff that if he did not file
his opposition papers by January 10, 2000, the motions
would be granted by default or decided without his input.
By letter dated December 28, 1999, plaintiff requested
additional time to respond to the defendants' motions;
I granted that request and extended plaintiff's time to

respond until March 10, 2000. To date, plaintiff has not filed papers opposing defendants' motions.

## DISCUSSION

### A. *General Legal Standards*

#### 1. *Motion to Dismiss*

**\*2** In reviewing a motion to dismiss, I must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). Therefore, the issue before the Court " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–236 (1974)), *cert. denied,* 519 U.S. 808 (1996). Moreover, the allegations of a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

#### 2. *Section 1983*

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants acted under "color of state law"; and (2) their conduct or actions deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Shabazz v. Vacco,* No. 97 Civ. 3761(DC), 1998 WL 901737, at *2 (S.D.N.Y. Dec. 28, 1998) (citing *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)).

To withstand a motion to dismiss, a § 1983 complaint must contain specific allegations of fact indicating a deprivation of constitutional rights. *See id.* In assessing a prisoner's claims under § 1983, the court "will dismiss a complaint that 'consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation." ' *Mitchell v. Keane,* 974 F.Supp. 332, 338 (S.D.N.Y.1997) (quoting *Martin v. New York State Dep't of Mental Hygiene,* 588 F .2d 371, 372

(2d Cir.1978)), *aff'd,* 175 F.3d 1008 (2d Cir.1999); *see also Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (broad, simple, and conclusory statements do not constitute a claim under § 1983).

### B. *Application*

Plaintiff alleges that he was "false[ly] arrest[ed] for a crime that [he] did not commit." (Compl.¶ 4). The complaint does not explicitly invoke any particular constitutional provisions. Because I am required to liberally construe plaintiff's *pro se* papers " 'to raise the strongest arguments that they suggest," ' *see Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), I construe the complaint as seeking to raise two constitutional claims: (1) a Fourth Amendment false arrest/false imprisonment claim, *see Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) ("A § 1983 claim for false arrest rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ...."); and (2) a Fourteenth Amendment malicious prosecution claim. *See Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994) ("Section 1983 liability may also be anchored in a claim for malicious prosecution, as this tort 'typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty." ') (quoting *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir.1991), *cert. denied,* 504 U.S. 911 (1992)).

#### 1. *The City and the NYPD Officers*

##### A. *False Arrest and False Imprisonment*

**\*3** To the extent that plaintiff is alleging false arrest and false imprisonment, they are considered synonymous causes of action. *See Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Covington v. City of New York,* 171 F.3d 117, 125 (2d Cir.) (Glasser, J., dissenting), *cert. denied, __ U.S. __,* 120 S.Ct. 363 (1999).

The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York state law. *See Weyant,* 101 F.3d at 852. To state a claim for false arrest under New York state law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2)

the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Posr,* 944 F.2d at 97.

For purposes of these motions to dismiss, I assume that Vasquez has alleged and can prove that the defendants intentionally confined him, that he was conscious of the confinement, and that he did not consent to the confinement. On the facts alleged, however, he cannot demonstrate that the confinement was not otherwise justified.

The existence of probable cause is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification. *See Weyant,* 101 F.3d at 852 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *see also Montalvo v. New York City Police Officer Jennings,* No. 93 Civ. 8351(KMW), 1996 WL 148483, at *2 (S.D.N.Y. Apr. 1, 1996). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221 (1992). The Second Circuit has held that a determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers ." *Weyant,* 101 F.3d at 852 (citations omitted). Furthermore, under New York law, a grand jury indictment creates "a presumption of probable cause that can be overcome only by a showing that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Bernard,* 25 F.3d at 104; *see also Green v. Montgomery,* No. 99–7515, 2000 WL 674757, at *7 (2d Cir. May 24, 2000) (citing *Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996)).

In the instant case, plaintiff was indicted by the Special Narcotics Grand Jury on November 30, 1995. Plaintiff's complaint pleads no facts suggesting fraud, perjury, suppression of evidence, or police misconduct. Nor does he allege any facts to call into question the presumption of probable cause created by the grand jury indictment. *See McSorley v. Consolidated Rail Corp.,* 581 F.Supp. 642, 643 (S.D.N.Y.1984). Even under the liberal pleading requirements of Fed.R.Civ.P. 8, the complaint must allege

facts showing that the pleader is entitled to relief. *Id.* at 644. Naked assertions and conclusory allegations cannot defeat a motion to dismiss. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983); *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). Thus, plaintiff fails to state a Fourth Amendment claim for false arrest or false imprisonment against the NYPD police officers, and the claims against the officers are hereby dismissed.

**\*4** Insofar as plaintiff's false arrest and false imprisonment claims against the City are based on the alleged actions of the NYPD officers, those claims must be dismissed as well. *See Thomas v.. Roach,* 165 F.3d 137, 145 (2d Cir.1999) ("A municipality is subject to liability for damages under § 1983 for the unconstitutional acts of *its employees.*" ) (emphasis added).

### B. *Malicious Prosecution*

Plaintiff's malicious prosecution claim fails for similar reasons.

The elements of a cause of action for malicious prosecution are "(1) the initiation of a proceeding, (2) termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of New York,* 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y .S.2d 453, 455 (1983). For purposes of these motions to dismiss, I assume that a proceeding was initiated against Vasquez and that it was terminated in his favor. He fails, however, to show that the officers lacked probable cause to initiate the proceeding or that the prosecution was motivated by malice.

The existence of probable cause defeats a claim for malicious prosecution. *Id.* As discussed above, a grand jury indictment creates a presumption of the existence of probable cause, and "[u]nder such circumstances, the plaintiff must plead facts which, if proved, would overcome the *prima facie* showing." *McSorley,* 581 F.Supp. at 643. Again, plaintiff has failed to plead facts sufficient to overcome the presumption of probable cause created by the indictment. Furthermore, Vasquez's complaint is devoid of any allegations of malice on the part of the officers. Accordingly, plaintiff fails to state a claim for malicious prosecution against the NYPD officers.

Because Vasquez cannot maintain his malicious prosecution claim against the City if the NYPD officers are not liable, *see Thomas,* 165 F.3d at 145, his malicious prosecution claim against the City is also dismissed."

#### 2. *New York City Police Department*

Vasquez's claims against the NYPD must be dismissed both because the claims against the officers must be dismissed and because the NYPD is not a proper defendant.

Under the City Charter, "New York City agencies such as the [NYPD] are organizational subdivisions of the City of New York lacking independent legal existence and, therefore, cannot be sued under § 1983." *Campbell v. New York Police Dep't,* No. 95 Civ. 1478(FB), 1996 WL 118547, at *1 (E.D.N.Y. Mar. 8, 1996); *see also East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992). Accordingly, the plaintiff's claims against the NYPD are dismissed.

#### 3. *NYCHA and the NYCHA Police Officers*

Finally, Vasquez's claims against NYCHA and its police officers must be dismissed because they, too, are not proper defendants.

The NYCHA Police Department did not even exist on September 21, 1995, the day of plaintiff's arrest. On September 9, 1994, the Mayor issued Executive Order No. 13, which provided that as of October 1, 1994 or as soon as possible thereafter "the [NYPD] shall assume the functions of the Housing Authority Police Department and uniformed housing police force thereof." Executive Orders of the Mayor of New York, No. 13. Consequently, in April of 1995, the Housing Authority Police Department (the "HAPD"), a division of the NYCHA, was transferred to and became a part of the NYPD. *See Ganley v. Giuliani,* 94 N.Y.2d 207, 214–15, 723 N.E.2d 73, 75–6, 701 N.Y.S.2d 324, 326–27 (1999).

**\*5** Accordingly, the officers who arrested Vasquez could not have been NYCHA police officers, and thus NYCHA cannot be held liable for the arresting officers' actions.

#### *CONCLUSION*

Defendants' motions to dismiss are granted. The complaint is dismissed in its entirety, with prejudice.

SO ORDERED.

#### All Citations

Not Reported in F.Supp.2d, 2000 WL 869492

---

#### Footnotes

1   I decide these motions as motions to dismiss, as I have considered only facts drawn from the complaint, the exhibits annexed thereto, documents incorporated into the complaint by reference, and documents that are in the public record and that are judicially noticeable. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); Fed.R.Evid. 201(b)(2). Defendants have submitted a number of public records from Vasquez's criminal file as exhibits, including the New York City Police Department arrest report, the criminal felony complaint, the indictment, and the acquittal. "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998), *cert. denied,* 525 U.S. 1103 (1998); *see also 5–Star Management, Inc. v. Rogers,* 940 F.Supp. 512, 518–19 (E.D.N.Y.1996). Plaintiff had actual notice of all the information in these documents and has relied on them in framing his complaint. Therefore, I may rely on them in deciding the motions to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* 503 U.S. 960 (1992). Moreover, I rely on the public documents not for the truth of the facts set forth therein, but for the fact that the documents exist.

2   The complaint states that plaintiff was arrested on September 9, 1995. (Compl.¶ 4). The arrest report indicates that the date was September 21, 1995. (City's Notice of Motion, Ex. A (Arrest Report)).

3   Although counsel for the City Defendants and the NYCHA did not move on behalf of the unidentified NYPD and NYCHA police officers named in the complaint as John Does 1–8, the claims against these defendants must be dismissed as well for the reasons set forth below.

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 482973
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Scott Wright, Plaintiff,
v.
Nypd Officer Michael Manetta and
Jacqueline Musanti, Defendants.

14-cv-8976 (KBF)
|
Signed 02/05/2016

OPINION & ORDER

KATHERINE B. FORREST, District Judge

**\*1** Plaintiff Scott Wright, an African-American male, brought this action on November 12, 2014, alleging that on November 21, 2013 he was subjected to selective enforcement when defendant NYPD Officer Michael Manetta ("Officer Manetta") arrested and charged him with assault. Plaintiff alleges that his arrest followed an altercation with defendant Jacqueline Musanti ("Musanti"), a Caucasian female, whom Officer Manetta did not arrest or charge. The complaint alleges one claim against Officer Manetta for selective enforcement pursuant to 42 U.S.C. § 1983, and three claims against Musanti for assault and battery, false arrest, and malicious prosecution under New York law. (Compl., ECF No. 2.) Pending before the Court is Officer Manetta's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), based on two grounds. First, that plaintiff fails to state a selective enforcement claim, and second, on the ground of qualified immunity. (ECF No. 13.)

For the foregoing reasons, Officer Manetta's motion is GRANTED. This action is hereby dismissed as to him. In light of the Court's dismissal of plaintiff's sole federal claim, plaintiff is ordered to show cause within 14 days why this action should not be dismissed for lack of federal subject matter jurisdiction.

I. BACKGROUND

According to the allegations in the complaint, on November 21, 2013, at around 9:10 a.m., plaintiff was walking to work, heading west on 39th Street between Seventh Avenue and Eighth Avenue in New York, NY. (Compl. ¶¶ 9-10.) Plaintiff alleges that he passed in front of defendant Musanti—who was also walking west on 39th Street—and that in response Musanti shortly thereafter intentionally kicked plaintiff twice in the back of his legs without provocation or justification. (Compl. ¶¶ 11, 14.) Musanti subsequently threatened to kick plaintiff again, yelled at him, and stood in plaintiff's path as he tried to walk towards the entrance of his office building. (Compl. ¶¶ 12-13.) In response, plaintiff "put his hands up and lightly pushed Musanti out of the way." (Compl. ¶ 13.) Musanti responded by attacking plaintiff in an angry and hysterical manner. (Compl. ¶ 13.)

The complaint alleges that when Musanti did not stop her assault, plaintiff grabbed Musanti by her coat and pulled her to the ground, trying to immobilize her. (Compl. ¶ **16**.) Shortly thereafter, a security guard from plaintiff's office building grabbed plaintiff from behind and separated plaintiff and Musanti. (Compl. ¶ **16**.) Musanti continued to attack plaintiff until the security guard released him, at which time plaintiff entered his office building and proceeded to his office on the sixth floor. (Compl. ¶ 17.) Plaintiff alleges that, after the incident, he had a bloody scratch on his face and other minor injuries, but that Musanti did not suffer any injuries. (Compl. ¶¶ 19-20.)

Plaintiff alleges that at approximately 9:15 a.m., several NYPD officers, including defendant Officer Manetta, entered plaintiff's place of employment. (Compl. ¶ 21.) Plaintiff alleges that the officers did not witness the altercation described above, but rather had been called to the scene by Musanti; he alleges that the officers informed him that Musanti "wanted to 'press charges' against him.' " (Compl. ¶¶ 21-22.) Officer Manetta asked plaintiff what happened, and plaintiff explained that Musanti had kicked him for no reason and then started attacking him. (Compl. ¶ 23.) Another officer asked if Musanti hit plaintiff; when plaintiff said that Musanti hit him and pointed out the scratches on his face, the officer scoffed and said "I get scratched all the time." (Compl. ¶ 23.) Plaintiff repeatedly told the officers that he wanted to press charges against Musanti, but Officer Manetta refused to take his complaint and told plaintiff that he could not press charges against Musanti;

Officer Manetta's only proffered reason was "because you can't." (Compl. ¶ 25.)

**\*2** Officer Manetta arrested plaintiff, handcuffed him, and escorted plaintiff out of his office. (Compl. ¶ 27.) Plaintiff was placed in the backseat of a patrol car and waited outside the front of his office for about 45 minutes, during which time plaintiff's boss arrived and went to speak to plaintiff. (Compl. ¶ 27.) An unidentified police officer—not Officer Manetta—said to plaintiff's boss with "malicious glee", "Are you going to free him?" (Compl. ¶ 27.) Plaintiff was taken to the NYPD's 14th Precinct, where he was booked and issued a desk appearance ticket by Officer Manetta that charged plaintiff with assault in the third degree. (Compl. ¶¶ 28-29.) Plaintiff alleges that during the booking process, Officer Manetta told plaintiff, "more than likely your case will be dismissed in court." (Compl. ¶ 28.)

Plaintiff appeared for his arraignment in criminal court and pled not guilty on January 6, 2014; at this point, plaintiff was charged with two counts of assault in the third degree, one count of attempted assault in the third degree, and one count of harassment in the second degree. (Compl. ¶ 31.) Plaintiff alleges that "all of the charges against [him] were based on false and malicious accusations by Musanti." (Compl. ¶ 32.) Plaintiff was required to return to criminal court on at least six additional occasions, until his case was dismissed on speedy trial grounds on October 2, 2014. (Compl. ¶¶ 34, 36.)

Plaintiff filed his complaint on November 12, 2014, alleging one claim against Officer Manetta under § 1983, and three claims against Musanti under New York law. (ECF No. 2.) [1] As to his § 1983 claim, plaintiff alleges that he was subjected to selective treatment by Officer Manetta when Officer Manetta arrested and charged plaintiff, but not Musanti, despite the fact that Officer Manetta knew Musanti to be "an equal participant in the altercation." (Compl. ¶¶ 41, 42.) Plaintiff alleges that the only relevant differences between himself and Musanti—and thus the only bases upon which Officer Manetta made his decision(s) as to whom to arrest—are that plaintiff is African-American and male whereas Musanti is Caucasian and female. (Compl. ¶ 43.)

Officer Manetta filed an answer on February 2, 2015 (ECF No. 6), and Musanti answered on March 13, 2015 (ECF

No. 9). On April 29, 2015, Officer Manetta brought the pending motion for judgment on the pleadings under Rule 12(c). (ECF No. 13.) Plaintiff filed an opposition brief on May 20, 2015 (ECF No. **16**), and Officer Manetta filed a reply on May 27, 2015 (ECF No. 17).

On January 15, 2016, this action was reassigned to the undersigned. On January 20, 2016, the Court ordered Officer Manetta to provide any additional argument relating to the issue of his entitlement to qualified immunity no later than January 27, 2016, and ordered plaintiff to provide any response no later than February 3, 2016. (ECF No. 18.) Officer Manetta filed his supplemental brief on January 27, 2016 (ECF No. 19), and plaintiff filed his response on February 3, 2016 (ECF No. 20).

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard applicable to Rule 12(b)(6) motions applies to motions brought under Rule 12(c). Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor, id., and a complaint may be dismissed where it fails to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (quotation marks and alteration omitted).

### B. Selective Enforcement

**\*3** A selective enforcement claim rests on principles of equal protection. LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994). To prevail on a claim for selective enforcement, a plaintiff must show that: " '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious

or bad faith intent to injure a person.' " Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999) (quoting LaTrieste Rest., 40 F.3d at 590); see also Annis v. Cnty. of Westchester, 136 F.3d 239, 247-48 (2d Cir. 1988) (affirming that gender constitutes an impermissible consideration).

" 'A showing that the plaintiff was treated differently compared to others similarly situated' is a 'prerequisite' and a 'threshold' matter to a selective treatment claim." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 692 (S.D.N.Y. 2011) (quoting Church of the Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 210 (2d Cir. 2004)). Courts within this Circuit have held that individuals are similarly situated for purposes of selective enforcement claims when they are "similarly situated in all material respects." Id. at 696; see Missere v. Gross, 826 F. Supp. 2d 542, 461 (S.D.N.Y. 2011) (stating that some courts have framed the standard as whether " 'a prudent person, looking objectively at the incidents, would think them roughly equivalent' " (quoting Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001))). A plaintiff's "naked assertions of discrimination" are insufficient to survive the pleading stage. Liang v. City of New York, No. 10-CV-3089 (ENV)(VVP), 2013 WL 5366394, at *11 (E.D.N.Y. Sept. 24, 2013).

Defendant argues that the standard for asserting a selective enforcement claim is the same as that for a "class of one" claim. (Def.'s Opening Br. at 5-6, ECF No. 15; see also Def.'s Reply Br. at 2, ECF No. 17.) A "class of one" claim arises when a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). There is disagreement within this Circuit as to whether "similarly situated" means the same thing in the context of a selective enforcement claim—in which the plaintiff claims selective treatment on the basis of an impermissible factor (e.g. race, gender, etc.)—as it does in the context of a class of one claim. E.g., Mosdos Chofetz Chaim, 815 F. Supp. 2d at 693-97 (collecting and comparing cases); Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 126, 134-35 (E.D.N.Y. 2013) (collecting and comparing cases).

In order to establish a class of one claim, a plaintiff must show that: (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a

comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy", and (2) "the similarity in circumstances and different in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). While the Second Circuit's formulations as to the elements necessary to establish selective treatment and class of one claims are nearly equivalent, a number of district courts have found that the similarly situated standard is "slightly less stringent in the selective enforcement context." Mosdos Chofetz Chaim, 815 F. Supp. 2d at 696; see also Gentile v. Nutty, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011); Mangino v. Inc. Vill. of Patchogue, 739 F. Supp. 2d 205, 255-56 (E.D.N.Y. 2010). To the extent that the similarly situated standard applicable to class of one claims is more stringent than that applicable to selective enforcement claims, the class of one standard is not relevant here. Plaintiff clearly alleges a traditional selective enforcement claim—based on the impermissible factors of race and gender—rather than a class of one claim. In any event, the Court does not rely on the above (slightly more stringent standard) from Ruston and Clubside in resolving defendant's motion, although the Court's reasoning would apply with equal force if that standard governed here.

### C. Qualified Immunity

**\*4** "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity should be decided at the earliest possible stage in litigation. Id. at 232; see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Qualified immunity may be granted at the pleading stage where "the facts supporting the defense appear[ ] on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004).

"A Government official's conduct violates clearly established law when, at the time of the challenged

conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. Even if a right is clearly established, an officer is entitled to qualified immunity in circumstances where it "was objectively reasonable for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quotation marks omitted). Qualified immunity " 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' " Rogoz v. City of Hartford, 796 F.3d 236, 247 (2d Cir. 2015) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

### III. DISCUSSION

Officer Manetta argues that he is entitled to judgment on the pleadings under Rule 12(c) because plaintiff has failed to plausibly allege the elements necessary to establish a selective enforcement claim and, alternatively, on the basis that he is entitled to qualified immunity. For the reasons set forth below, the Court dismisses plaintiff's selective enforcement claim on both grounds.

First, plaintiff has failed to plausibly allege the initial, threshold requirement of a selective enforcement claim, which is that he was subjected to selective treatment when compared with others that were similarly situated to him. Lisa's Party City, 185 F.3d at 16; Mosdos Chofetz Chaim, 815 F. Supp.2d at 692. The only individual whom plaintiff alleges he was similarly situated to is Musanti, the other participant in the incident that gave rise to plaintiff's arrest. As defendant correctly points out, however, plaintiff's own allegations clearly show that plaintiff and Musanti were not similarly situated in at least one highly relevant and material respect. The material distinction is, namely, that after the altercation concluded, Musanti immediately contacted the police to report the incident, whereas plaintiff proceeded to his office and did not contact the authorities. (Compl. ¶¶ 17, 21-22.) In his opposition brief, plaintiff concedes that an inference—as "equally valid" as any other alternative—to have been drawn from the facts and circumstances known to Officer Manetta and the other officers who carried out the arrest

was that plaintiff was at fault for the bulk of the incident. (Pl.'s Opp. Br. at 5, ECF No. **16**.)

The distinction between Musanti calling the police and plaintiff not doing so is highly significant in light of plaintiff's allegation that the police officers who entered his office and arrested him, including Officer Manetta, were not present during the altercation with Musanti. (Compl. ¶ 21.) As such, plaintiff alleges that the only information known to the officers when they entered his office was that Musanti had called the police to the scene to report the altercation and that plaintiff, who had visible scratches on his face, had left the scene and decided not to actively involve the authorities. The complaint also alleges that plaintiff did not indicate an intention to "press charges" until after officers had arrived to question him and had informed him that Musanti sought to "press charges" against him. (Compl. ¶ 22.) The Court's determination that the distinctions between plaintiff and Musanti are material is further supported by the fact that the probable cause standard, used to measure the legality of an arrest, "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). [2]

**\*5** Second, even if the allegations in the complaint sufficiently pled a selective enforcement claim, the Court concludes, in the alternative, that Officer Manetta is entitled to qualified immunity. As explained above, Officer Manetta is entitled to qualified immunity to the extent that his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," Pearson, 555 U.S. at 231, or if it "was objectively reasonable for [him] to believe the conduct at issue was lawful," Gonzalez, 728 F.3d at 154.

As alleged in the complaint, the facts known to Officer Manetta and his fellow officers regarding plaintiff's altercation with Musanti were that Musanti decided to immediately call the police to the scene, while plaintiff left the scene and chose not to call the police. Plaintiff himself acknowledges this distinction. (E.g., Pl.'s Supp. Br. at 4, ECF No. 20.) Furthermore, as discussed above, plaintiff did not indicate to the officers that he sought to press charges until after he had been informed that Musanti sought to press charges against him.

Based on those facts, which the Court derives solely from plaintiff's own allegations, it cannot be said that Officer Manetta violated a clearly established right of which a reasonable person would have known. At the very least, it was objectively reasonable under these circumstances for Officer Manetta to believe—and plaintiff cites no governing precedent to the contrary—that he was acting in accordance with the law in arresting and charging plaintiff, but not arresting and charging Musanti. Zahra v. Town of Southold, 48 F.3d 674, 687 (2d Cir. 1995) (stating that qualified immunity determination is based on "objective reasonableness of [the defendant's] actions at the time, and is not a subjective inquiry into their personal motives"). To the extent that plaintiff seeks to defeat Officer Manetta's motion with allegations that Officer Manetta and other officers exhibited malice, that argument cannot defeat the availability of Officer Manetta's qualified immunity where his conduct was objectively reasonable. Id. at 687-88; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).

### IV. CONCLUSION

For the reasons set forth above, defendant Michael Manetta's motion for judgment on the pleadings is GRANTED. Defendant Manetta is hereby DISMISSED from this case.

By granting Officer Manetta's motion, the Court has dismissed the sole claim arising under federal law. As a result, a question arises as to the Court's supplemental jurisdiction to hear plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). In a footnote in plaintiff's supplemental brief, he asserts that the action should not be dismissed as to Musanti on the ground that diversity jurisdiction is proper. (Pl.'s Supp. Br. at 6 n.1.) As this issue has not been adequately briefed by the relevant parties as part of Officer Manetta's motion, the Court hereby orders plaintiff to show cause **within 14 days** setting forth in further detail why this action should not be dismissed for lack of federal subject matter jurisdiction in light of this decision.

The Clerk of Court is directed to close the motion at ECF No. 13.

SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 482973

---

Footnotes

1    The complaint asserts federal subject matter jurisdiction under 28 U.S.C. § 1331 based on plaintiff's § 1983 claim; it asserts supplemental jurisdiction under 28 U.S.C. § 1367 as to plaintiff's state law claims. (Compl. ¶¶ 5-6.)

2    To the extent that plaintiff seeks to rely on allegations that officers other than Officer Manetta made stray comments that raise an inference of maliciousness or improper motive (e.g. plaintiff's allegation that an officer stated with "malicious glee" to plaintiff's employer, "Are you going to free him?" (Compl. ¶ 27)), such allegations are irrelevant because plaintiff does not allege that Officer Manetta endorsed or adopted any such statement, and plaintiff provides no other basis to impute such comments to Officer Manetta.

---

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works.  5